97 F.3d 1452
 Pens. Plan Guide P 23932G
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SIBLEY LUMBER CENTERS, INC., Plaintiff-Appellant,
v.
McLEOD ADMINISTRATIVE SERVICES, INC., a Michigan
corporation; and Donald A. McLeod, Defendants-Appellees.
 No. 95-1793.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1996.
 
 Before: GUY, BATCHELDER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Sibley Lumber Centers, Inc. (Sibley), appeals from a summary judgment granted in favor of McLeod Administrative Services, Inc. and Donald McLeod (McLeod).[1] The district court entered judgment after a finding that this action was barred by the statute of limitations.[2]
 
 
 2
 Our review of the record convinces us that summary judgment was appropriate, but our rationale differs from that of the trial judge.
 
 I.
 
 3
 The Detroit Lumber and Building Association Retirement Plan (Plan) was a defined multiple-employer benefit plan that had been in existence for almost 30 years. Sibley was one of a number of participating employer members of the Plan, and McLeod was hired by the Plan in 1983 to help with its administration. In 1984, concerned about escalating costs, three employer members requested withdrawal from the Plan. Since this was a plan maintained under the provisions of ERISA, it was necessary for the trustees of the Plan to seek the approval of the Pension Board Guaranty Corporation (PBGC). Before the PBGC could respond, three more employers sought to withdraw. In the face of these withdrawal requests, the trustees decided on December 12, 1985, to freeze benefits and proceed to termination.
 
 
 4
 The trustees were subsequently advised by counsel that because the Plan's unfunded liabilities were $1.4 million, the PBGC would not approve termination until the remaining employers provided additional funding. Based on this information, the trustees decided on February 11, 1986, to rescind the motion to terminate, but did allow the benefits to remain frozen. Actuarial studies were ordered in expectation that enough money would accumulate in the Plan to cover the unfunded liability.
 
 
 5
 On September 21, 1989, the trustees again voted to terminate the Plan, but were informed in December 1989 that the PBGC would not approve the termination. The trustees then sought to persuade the PBGC to allow a "distress" termination. This request was also denied, and in October 1992 this lawsuit was instituted.
 
 
 6
 The trustees continued their efforts to terminate the Plan, however, and in July of 1993 with the assistance of the PBGC, the Plan was terminated, and all employers involved contributed to the termination liability assessed at that time.
 
 
 7
 During the time that the trustees were attempting to work out termination problems with the PBGC, this litigation was administratively dismissed. In August 1993 after termination was completed plaintiffs moved to reinstate, and at the time the motion to reinstate was granted, earlier filed motions for summary judgment also were reinstated.
 
 
 8
 The reactivated lawsuit, although still based on the original complaint, was now considerably narrowed since all of the claims relating to effectuating termination were now moot. The only remaining claims were against McLeod and plaintiffs requested the court to:
 
 
 9
 C. Order an accounting of all administrative and professional fees over the past five (5) years in order to determine whether they were incurred for the benefit of the Plan, and order repayment of all such fees that were not paid for its benefit;
 
 
 10
 D. Award Plaintiff Sibley its reasonable costs and attorney fees so needlessly incurred in effecting its withdrawal from the Plan....
 
 
 11
 (App. 28.)
 
 
 12
 In a nutshell, it was Sibley's claim that McLeod had somehow dragged out the termination proceedings to continue to be paid its fees for administrative servicing.[3]
 
 
 13
 On June 22, 1995, the district judge granted summary judgment in favor of defendants. In its memorandum opinion, the court found that:
 
 
 14
 The injury central to Plaintiffs' complaint is that "from the date of termination, (arguably in 1985), until forced to act by Plaintiffs' Complaint and intervention of the PBGC, Defendants failed and refused to implement the Trustee's decision" to terminate the plan. Accepting Plaintiffs' version of the facts, the trustees voted to terminate the plan in December 1985 and, in February 1986, affirmed that decision. According to Plaintiffs nothing happened thereafter to effectuate that decision. In light of this inaction on the part of the plan trustees and administrators, the court finds that by the end of June 1986, Plaintiffs knew or should have known "of the injury that is the basis of the action."
 
 
 15
 (App. 187) (footnotes omitted).
 
 
 16
 The district court's holding is problematic for two reasons. First, the record does not support a December 1985 termination date for the Plan, but rather explicitly demonstrates that the Plan was not actually terminated until 1993 pursuant to a 1989 resolution to terminate, which had been passed by the trustees.
 
 
 17
 Second, it is clear that Sibley does not complain of any action taken by the trustees in 1985 or early 1986 but, rather, claims that McLeod impeded termination subsequent to those dates. It is understandable how the district court reached its conclusion, however, since the plaintiffs' complaint alleges that McLeod "received substantial fees from the Plan ... since its termination...." (App. 29.) Since the complaint was filed in 1992 and termination was not effective until 1993, the plaintiffs obviously had to be referencing some earlier action as constituting termination. The district court selected the December 1985 date when the first resolution to terminate was passed, and started the running of the statute of limitations some six months thereafter.[4] Without necessarily rejecting the finding of the district court, we conclude that other grounds urged by the defendants provide a better basis for affirming the summary judgment.
 
 
 18
 When plaintiffs filed this lawsuit, it was in a much different posture than it is now. Since Plan termination had not yet occurred, much of the thrust of the suit was directed at seeking an early termination. Also, a significant portion of the claims was directed against the Plan's trustees. Neither the termination issue nor any claims against the trustees are involved in this appeal. As a result, some of the general claims made in the complaint against all defendants no longer have any application to McLeod.
 
 
 19
 When the complaint is parsed and only those specific claims made against McLeod that would survive plan termination are reviewed, it is clear to us that the complaint fails to allege a claim against McLeod upon which relief can be granted. Sibley wholly failed at the summary judgment stage to demonstrate that it could show how McLeod in any way impeded termination. In fact, it is clear that the roadblock was the PBGC, albeit appropriately so. Similarly, the manner in which McLeod was responsible for preventing Sibley from withdrawing from the Plan is never made clear. Part of the problem stems from the fact that in Count II of the complaint, one of the two remaining counts, plaintiffs only allege wrongful action by the "defendants." Unlike in Count III, no reference is made to McLeod by name at all. Since Count II is entitled "Breach of Fiduciary Duty--Withdrawal," it appears to be aimed primarily at the trustees who clearly are fiduciaries, unlike McLeod who may or may not be a fiduciary.
 
 
 20
 When Count III, the "Breach of Fiduciary Duty--Unjust Enrichment" count is examined, and which count mentions McLeod by name, we are unable to find any viable claim of wrongdoing alleged. There is an allegation that McLeod was continuing to be paid the alleged "unjust enrichment," but in the face of the Plan not yet having been terminated and McLeod working under a valid contract with the trustees, we are unable to see that this states an actionable claim. Although the district court did not address this argument, it was raised below and we are free to base our holding on this rationale. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied sub nom. Pinney Dock & Transp. Co. v. Norfolk & Western Ry. Co., 488 U.S. 880 (1988).
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Although there were other plaintiffs and defendants in the district court action, Sibley and McLeod are the only parties to this appeal
 
 
 [2]
 The statute of limitations was only one of several grounds urged by the defendants as a basis for summary judgment
 
 
 [3]
 McLeod received an annual, flat fee of $15,000 for the services it provided
 
 
 [4]
 It is not clear whether the applicable statute of limitations is three years or six years, but the district court found it unnecessary to resolve this issue since the date it used was more than six years prior to the filing date of the lawsuit